UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY F. ELLIOTT | No. 2:15-cv-569-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, filed on October 21, 2015, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from her amended alleged onset date of June 1, 2012, through the date of the final administrative decision.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment on December 21, 2015, which was later amended on February 5, 2016.  (ECF Nos. 18, 19.)  No optional reply brief was filed.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 8, 12.)

1

For the reasons that follow, the court DENIES plaintiff's motion for summary judgment and/or remand, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.   BACKGROUND

Plaintiff was born on May 3, 1963, has a ninth grade education, and speaks English. (Administrative Transcript ("AT") 58, 146, 167-68.)[2]  She previously worked as caretaker, kitchen worker, and house cleaner.  (AT 51-53, 169.)  On September 22, 2011, plaintiff applied for SSI, alleging that her disability began on January 15, 2011, at 47 years of age.  (AT 58-59, 146.)  Plaintiff alleged that she was disabled primarily due to back pain and mood disorders. (Id.)  After plaintiff's application was denied initially, she was struck by a drunk driver on June 1, 2012, and sustained, among other injuries, a fracture to her spine which required surgery.  (AT 68, 278.)  After plaintiff's application was again denied on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 14, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 35-57.)  At the hearing, plaintiff amended her alleged onset date to June 1, 2012.  (AT 42.)  The ALJ issued a decision dated June 25, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between September 22, 2011 and the date of that decision.  (AT 9-24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 15, 2015.  (AT 1-6.)  Plaintiff then filed this action in federal district court on March 13, 2015, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly rejected portions of the opinion of plaintiff's treating physician, Dr. Bella Agrawal; (2) whether the ALJ

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

failed to address the side effects of plaintiff's medications; and (3) whether the VE's testimony lacked a proper foundation.

III.   LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.   DISCUSSION

A.   Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or

3

engaged in substantial gainful activity since September 22, 2011, the application date. (AT 14.) At step two, the ALJ found that plaintiff had the following severe impairments: "residuals of status post thoracic compression fracture with mild scoliosis." (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 10 pounds frequently and 20 pounds occasionally; she can stand and walk up to 4 hours out of an 8-hour day and she can sit up to 4 hours out of an 8-hour day; she can occasionally bend, stoop, crouch, climb, kneel, balance, crawl, push and pull; she needs to sit briefly at a workstation (2 or 3 minutes) after 30 minutes of standing to relieve pain.

(AT 17.)

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. (AT 22.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (Id.) The ALJ relied on the VE's testimony that plaintiff

---

equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1  would be able to perform the following representative occupations: (1) small products assembler,
2  with approximately 29,000 jobs in the national economy and 2,800 jobs in California; (2) storage
3  facility rental clerk, with approximately 62,000 jobs in the national economy and 11,000 jobs in
4  California; and (3) cashier II, with approximately 110,000 jobs in the national economy and
5  12,300 jobs in California (accounting for 90% erosion for a sit/stand option). (AT 23.) Thus, the
6  ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from
7  September 22, 2011, through the date of the ALJ's decision. (Id.)

      B.      <u>Plaintiff's Substantive Challenges to the Commissioner's Determinations</u>

      *Whether the ALJ improperly rejected portions of the opinion of plaintiff's treating physician, Dr. Bella Agrawal*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201-02 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. <u>Holohan</u>, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. <u>Id.</u> at 830.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund</u>, 253

F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On March 26, 2013, plaintiff's treating physician, Dr. Bella Agrawal, completed a physical functional capacity questionnaire. (AT 563-66.) In formulating plaintiff's RFC, the ALJ assigned significant weight to Dr. Agrawal's opinion, but declined to adopt some of the limitations outlined in that opinion. (AT 21-22.) On appeal, plaintiff challenges the ALJ's rejection of four of those limitations: (1) that plaintiff's pain would frequently interfere with the attention and concentration needed to perform even simple work tasks; (2) that plaintiff could never stoop; (3) that plaintiff could rarely twist or climb ladders; and (4) that plaintiff would miss about two days of work per month. (AT 563-66.) For the reasons discussed below, the ALJ did not commit prejudicial error in rejecting those proposed limitations.

The ALJ properly gave no weight to Dr. Agrawal's assessment that plaintiff's pain would frequently interfere with the attention and concentration needed to perform even simple work tasks, because it is conclusory and unsupported by any specific clinical findings or reasoning. Indeed, it is also clearly inconsistent with Dr. Agrawal's finding in another portion of the questionnaire that plaintiff was "capable of performing full-time work (8 hours per day, 40 hours per week) on a regular, sustainable, and reliable basis in the national economy." (AT 566.) The ALJ's rejection of that limitation is further bolstered by the opinions of the mental consultative examiners, who personally evaluated plaintiff and respectively found plaintiff's concentration to be "within normal limits" and in the "low average range." (AT 229, 465.)

Likewise, Dr. Agrawal's assessment that plaintiff would miss about two days of work per month is unsupported by specific clinical findings or rationale. As the ALJ reasonably observed,

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

although plaintiff continues to experience residual chronic pain, the pain appears to be relatively effectively controlled by medication, and plaintiff's records do not show a history of frequent exacerbations that would prevent attending work at Dr. Agrawal's suggested frequency. (AT 20, 21.) Notably, the consultative orthopedic examiner's post-surgery opinion also did not indicate that plaintiff would have to regularly miss days of work as a result of her impairments. (AT 500-04.)

Finally, even assuming, without deciding, that the ALJ improperly rejected Dr. Agrawal's proposed limitations involving stooping, twisting, and climbing ladders, any such error was harmless, because those limitations would not affect the ultimate finding that there were a significant number of jobs in the national economy that plaintiff could perform. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1990) (harmless error analysis applicable in judicial review of social security cases); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). The three representative occupations identified by the VE generally do not involve stooping, twisting, or climbing, with the exception of the storage facility rental clerk position, which requires occasional stooping. See DICOT 706.684-022 (small products assembler I); DICOT 295.367-026 (storage facility rental clerk); DICOT 211.462-010 (cashier II). Even if the storage facility rental clerk position were completely eliminated by Dr. Agrawal's stooping limitation, there would still remain a significant number of jobs in the national economy that plaintiff could perform.

In light of the above, the court finds no prejudicial error with respect to the ALJ's treatment of Dr. Agrawal's opinion.

*Whether the ALJ failed to address the side effects of plaintiff's medications*

Plaintiff further contends that the ALJ failed to address evidence of side effects caused by plaintiff's narcotic pain medication. Plaintiff complained of severe and prolonged constipation, but no medical opinion in the record sets forth any concrete work-related limitations related to plaintiff's constipation. Dr. Agrawal did opine that plaintiff's narcotic pain medication would impair plaintiff's driving and operation of machinery. (AT 564.) However, a driving limitation would not significantly erode the number of jobs in any of the three representative occupations, if

1  at all, and none of the representative occupations involve the operation of moving mechanical

2  parts. See DICOT 706.684-022 (small products assembler I); DICOT 295.367-026 (storage

3  facility rental clerk); DICOT 211.462-010 (cashier II).[5]  As such, any failure to address plaintiff's

4  medication side effects here was harmless error.

*Whether the VE's testimony lacked a proper foundation*

Plaintiff also argues that the ALJ failed to ensure that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and that the VE's testimony therefore lacked a proper foundation.  More specifically, plaintiff's argument proceeds as follows: In response to the ALJ's RFC, the VE identified three representative occupations that are classified by the DOT as light work.  However, according to plaintiff, the ALJ's RFC does not actually match the definition of light work in the DOT, and the ALJ thus impermissibly failed to inquire as to the basis for the VE's deviation from the DOT, requiring remand.

As an initial matter, plaintiff failed to raise this evidentiary issue before either the ALJ or the Appeals Council.  The Ninth Circuit has held that, unless manifest injustice would result, claimants must generally "raise all issues and evidence at their administrative hearings in order to preserve them on appeal," at least when claimants are represented by counsel.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999); see also Stark v. Astrue, 462 Fed. App'x 756, 756 (9th Cir. 2011) (unpublished) (involving alleged conflict between a VE's testimony and the DOT raised for the first time on appeal).  This requirement exists because the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies, including inconsistencies involving vocational testimony.  Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by plaintiff's counsel, and is on hand to address any alleged inconsistencies between the expert's own testimony and the DOT.  To generally permit claimants to later second-guess a

---

[5] Even if the small products assembler position involved some operation of machinery, and even assuming *arguendo* that therefore both the small products assembler position and the storage facility rental clerk position were completely eliminated (due to the machinery and stooping limitations), the number of cashier jobs (with approximately 110,000 jobs in the national economy and 12,300 jobs in California) would still represent a significant number of jobs in the national economy.

8

vocational expert's testimony in their federal court appeals, when the claimants failed to challenge such testimony in the administrative proceedings below, would inject a significant amount of inefficiency into an already-delayed claim resolution process, and also impermissibly alter the scope of judicial review of Social Security claims.

In this case, plaintiff, who was represented by an attorney, declined to even question the VE, let alone challenge the VE's testimony, at the hearing before the ALJ. (AT 55.) Nor did plaintiff challenge the VE's testimony before the Appeals Council. (AT 222-25.) As such, the court concludes that the issue is waived. For the reasons discussed below, plaintiff has also not made an adequate showing of manifest injustice to overcome the waiver.

Even if the issue were not waived, plaintiff's argument fails on the merits. Contrary to plaintiff's claim, the ALJ discharged her obligation by specifically asking the VE to advise the ALJ of any conflicts between the VE's testimony and the DOT. (AT 38 ["And Dr. Drumwright, if your testimony today is in conflict with the DOT, please explain the conflict and advise the Court as to the basis of your testimony."].) The VE identified no conflict between his testimony and the DOT with respect to the three representative occupations at issue, and this court likewise finds no apparent conflict. Under the DOT, "light work" is defined as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly…to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

See http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM. As is obvious from the foregoing, the definition of "light work" under the DOT is exceedingly broad, and in light of the "and/or" language, jobs need not meet all of the criteria outlined in the definition to be classified as light work. Thus, some light jobs might be compatible with the ALJ's RFC, while

others might not be.  However, there is no clear apparent conflict between the VE's testimony and the DOT.  Indeed, the RFC's limitation to standing and walking up to 4 hours nonetheless implicates standing and walking to a significant degree, which is consistent with one of the DOT's criteria for light work.  To the extent that the RFC contained additional limitations, such as postural limitations and a sit-stand option, those limitations merely resulted in erosion of the applicable occupational base.  Indeed, in this case the VE specifically noted that he was eroding the jobs numbers to account for plaintiff's sit-stand limitation.  (AT 55.)  VEs routinely testify regarding erosion of the number of jobs given certain limitations, and also identify specific representative occupations within an exertional category that would be appropriate for a particular set of limitations.  Simply put, the fact that a VE identifies a subset of jobs within an exertional category that would be compatible with a given set of limitations does not mean that the VE is somehow deviating from the DOT.

V.   CONCLUSION

In sum, the court finds that ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF Nos. 18, 19) is GRANTED.

3. The final decision of the Commissioner of Social Security is AFFIRMED, and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  May 17, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE